THE PRESIDENT AND DIRECTORS OF THE BANK OF THE METROPOLIS, PLAINTIFFS IN ERROR, *v.* THE PRESIDENT, DIRECTORS, AND COMPANY OF THE NEW ENGLAND BANK.

Referring to the case of the Bank of the Metropolis against the New England Bank, reported in 1 Howard, 234, the following instructions to the jury upon the second trial would have carried out the opinion of this court, viz.: —

1st. If, upon the whole evidence before them, the jury should find that the Bank of the Metropolis, at the time of the mutual dealings between them, had notice that the Commonwealth Bank had no interest in the bills or notes in question, and that it transmitted them for collection merely as agent, then the Bank of the Metropolis was not entitled to retain against the New England Bank for the general balance of the account with the Commonwealth Bank.

2d. And if the Bank of the Metropolis had not notice that the Commonwealth Bank was merely an agent, but regarded and treated it as the owner of the paper transmitted, yet the Bank of the Metropolis is not entitled against the real owners, unless credit was given to the Commonwealth Bank, or balances suffered to remain in its hands, to be met by the negotiable paper transmitted, or expected to be transmitted, in the usual course of the dealings between the two banks.

3d. But if the jury found, that, in the dealings mentioned in the testimony, the Bank of the Metropolis regarded and treated the Commonwealth Bank as the owner of the negotiable paper which it transmitted for collection, and had no notice to the contrary, and, upon the credit of such remittances, made or anticipated in the usual course of dealing between them, balances were, from time to time, suffered to remain in the hands of the Commonwealth Bank, to be met by the proceeds of such negotiable paper, then the Bank of the Metropolis is entitled to retain against the New England Bank for the balance of account due from the Commonwealth Bank.

This case was brought up by writ of error from the Circuit Court of the United States for the District of Columbia, sitting for the county of Washington.

It was the same case which was before this court at January term, 1843, and is reported in 1 Howard, 234. It is unnecessary, therefore, to state again the facts of the case which existed prior to that report.

The Supreme Court having reversed the judgment of the Circuit Court, and directed it to award a *venire facias de novo*, the cause came up again for trial in the Circuit Court, at March term, 1844. The result of the second trial was a judgment in favor of the New England Bank for $ 4,245.24, with interest upon parts of this sum from various times.

The evidence offered on the part of the plaintiff, and also that on the part of the defendant, are stated in the bill of exceptions, with a reference to a great number of letters and accounts. This evidence must be inserted in substance, in order to render intelligible the prayers to the court. The first prayer was made by the defendant, and does not appear to have been excepted to by the plaintiff, although granted by the court; but the plaintiff then made a prayer for himself, which was also granted by the court, and excepted to by the defendant, and upon this exception the case came up. But the case cannot be fully understood without spreading all this upon the report of it.

### Evidence on the part of the plaintiff, viz. the New England Bank.

On the trial of this cause, the plaintiffs, to maintain the issue on their part joined, offered evidence tending to show, that, from the year 1834 to the year 1838, there had been extensive mutual dealings between the Bank of the Metropolis, in the city of Washington, and the Commonwealth Bank, a bank in Boston, in the State of Massachusetts, at which place the plaintiffs' bank is also situated; that both of these banks (the Metropolis and the Commonwealth) were selected by the government of the United States as deposit banks, and in consequence became extensively employed as agents for other banks, and for individuals, in the transmission of negotiable paper for col-

Bank of Metropolis *v.* New England Bank.

lection in the manner usual among such institutions; that the usage well known and established universally in the District of Columbia, and throughout this country, in such cases, is for the holder of negotiable paper to indorse and deliver it, without any consideration, to a bank (or, if the bank is the holder, to another bank), to be indorsed and delivered by such bank with which it has been so deposited to another bank, and so on to transmit it from bank to bank till it reaches its place of destination; that when it is paid, the proceeds are credited to the bank by which it was last indorsed, and by that bank to its indorser, and so on back to the owner; but it is not usual for the banks to remit the precise amount so collected at the time of such collections, but to place the same to the general credit of the bank from which it was received, to be settled by drafts or otherwise, as might be most convenient for such banks respectively; and in case of non-payment, the costs thereof and postage are charged from the one bank to the other till the owner is charged therewith; that it is also the usage and custom of the banks receiving such paper to treat it in all respects as they do their own paper, but it is not usual for any bank to purchase negotiable paper from another bank. That the said Bank of the Metropolis and the said Commonwealth Bank were extensively engaged in collecting and remitting to each other for collection, on account of other banks and individuals, negotiable paper, deposited with either for that purpose, and in that business they conformed to the usage aforesaid in the mode of transmitting such paper by indorsement, and also in the mode of keeping their accounts of such business; and it was the uniform practice of the said Commonwealth Bank, in transmitting such paper, to accompany the same with a letter, advising the Bank of the Metropolis that it was "forwarded for collection" (letters copied in pages 22, &c.); but in some instances they transmitted negotiable paper by letters in the following form (copied in pages 25, &c.); that in the course of the said dealing between the said two banks, repeated instances occurred in which the Bank of the Metropolis directed the said Commonwealth Bank to deliver to third parties negotiable paper, which had been forwarded by the former to the latter; and such direction was complied with, and the paper delivered according to such order, without reference to the state of the accounts between the said two banks; and also, that either of the said two banks drew upon the other, from time to time, or directed remittances to be made, without having regard to the negotiable paper which had been before them, or was expected to be remitted for collection.

They further offered evidence tending to show, that, during

the fall of the year 1837, the plaintiffs, being the holders of certain negotiable paper coming due in the District of Columbia, at various times during the said fall and winter, indorsed and delivered such paper to the said Commonwealth Bank, without consideration, as the agent of the plaintiffs for that purpose, and according to the usage and custom above stated, to be transmitted by said Commonwealth Bank to the said District for collection; and the said Commonwealth Bank, from time to time, as it received the said paper from the plaintiffs, indorsed and delivered the same, without consideration, and according to the said usage and custom, to the said defendants, and in delivering them to defendants, they advised defendants that such paper was forwarded for collection.

That on the 13th day of January, 1838, there were in the hands of the defendants certain bills and notes, the property of the plaintiffs, and which had been indorsed and delivered by plaintiffs to the Commonwealth Bank, in manner and according to the usage and custom above stated, for collection, without consideration, and which had been indorsed by the last-mentioned bank to the Bank of the Metropolis, and forwarded to the said defendants in letters, advising them in every instance that the said paper was forwarded for collection; that on the said 13th day of January, 1838, the said Commonwealth Bank gave to the plaintiffs an order in writing, addressed to the defendants, as follows (. pied in pages 27, &c.); that the said letter was immediately forwarded by due course of mail to, and received by, the defendants; that the said negotiable paper amounts to the sum of $ 4,466.75; that none of the said paper was due or had been paid to the defendants at the time of the receipt by them of said order of the 13th January, 1838, except the sum of $ 241.01, and that sum had been carried to the credit of the Commonwealth Bank in the general account with said bank, and that the residue of the said paper was afterwards, and before the bringing of this suit, paid to the said defendants; that the said negotiable paper, in the said order of the 13th January, 1838, mentioned, was part of the paper indorsed and delivered in the fall of 1837, as above stated, to the Commonwealth Bank by the plaintiffs, according to the usage and custom above stated, without consideration, to be collected for the plaintiffs, according to the said usage and custom, and was, at the time of such delivery, and ever after, the property of the plaintiffs.

And the plaintiffs further offered in evidence the following deposition of Charles Hood, viz.: —

"I, Charles Hood, now of Dorchester, in the county of Nor-

folk, in Massachusetts, formerly of the city of Boston, in the county of Suffolk, on oath depose and say, that I was cashier of the Commonwealth Bank from the time of its commencing to the time of its closing business; said bank having been a bank established by law in the Commonwealth of Massachusetts, and having transacted business in Boston. I further depose and say, that the papers exhibited by me to the magistrate taking my deposition, for the purpose of being annexed thereto, and marked A, B, and C (copied in pages 33, &c.), are original accounts current rendered by the Bank of the Metropolis, in Washington city, to said Commonwealth Bank.

" The said papers are all the accounts rendered by the said Bank of the Metropolis to the said Commonwealth Bank, which I can now find; said Bank of the Metropolis rendered one or more accounts subsequent to these, which I cannot find, the same having been lost or mislaid. I cannot find any previous account rendered by said Bank of the Metropolis. The principal part of the items on the credit side of said account consists of checks and drafts drawn by said Bank of the Metropolis on said Commonwealth Bank; each draft or check being indicated in the account by its number. I further depose and say, that there was not, to my knowledge, at any time any agreement or understanding between said two banks, that the balances due, from time to time, from one bank to the other, should be suffered to remain in the hands of either, to be met by the proceeds of negotiable paper already transmitted, or expected to be transmitted, in the usual course of business between them. If there had been any such understanding or agreement between said banks, I have not the least doubt I should have known it. There was no usage or practice between said banks to allow any such balances due to the Commonwealth Bank to remain undrawn for, to be met by the proceeds of negotiable paper transmitted, or expected to be transmitted. I do not know of any usage or practice on the part of the Bank of the Metropolis to allow balances due to said bank from the Commonwealth Bank to remain undrawn for, to be met by proceeds of paper transmitted, or to be transmitted, in the usual course of business between said banks. I further depose and say, that, in fact, the Commonwealth Bank drew on the Bank of the Metropolis for its balances as often as its business or convenience required, without reference to the negotiable paper held at the time, or expected to be transmitted in the usual course of business, for payment or collection, between said banks. This practice was uniform. I further depose and say, that, in pursuance of an understanding between said banks, each of them occasionally overdrew

upon the other, as its convenience required. I further depose and say, the two papers exhibited by me to the magistrate taking this deposition, for the purpose of being annexed thereto, marked D, E (copied in page 55, &c.), are true copies of letters transmitted by said Commonwealth Bank to said Bank of the Metropolis, at or about the time of their respective dates. I further depose and say, that the said two banks were, among others, originally selected as deposit banks by the government. The deposit banks became extensively the agents of other banks and institutions, for the purpose of making collections in various and distant parts of the United States. It has never been the practice of banks, as far as I know, to purchase negotiable paper held by other banks, and take the indorsement of such other banks, or without such indorsement.

"CHARLES HOOD."

The plaintiffs also offered in evidence a great number of letters and accounts which had been transmitted between the Bank of the Metropolis and the Commonwealth Bank.

The evidence offered on the part of the Bank of the Metropolis was as follows.

"And the said defendants, in order to maintain and prove the issue on their part, gave to the jury competent and legal evidence tending to prove that it is and has long been the uniform practice and usage of the banks in the District of Columbia, when commercial paper is transmitted to it for collection by banks or individuals, when indorsed by the party so remitting it, and in the absence of information that any other person or party has an interest therein, to treat and deal with the party so making the remittance as the owner of the same, the proceeds, when received, are credited to his account, and he is charged in said account with all the expenses attending the same, as costs, protests, postage, &c. That this usage and practice uniformly prevailed in the dealings between the said Commonwealth Bank and the Bank of the Metropolis; that they mutually transmitted funds and paper of different kinds to each other, government drafts, certificates of deposit, bills, notes, and drafts of private individuals; that all, of every description, were carried into the general accounts current between the two institutions, which are both banking institutions, regularly and duly chartered, and engaged exclusively in the business of banking; that, in the account current, each bank was regularly credited by the other with the proceeds of all such commercial paper thus received by it from the other, when collected, and charged with the costs of collection, protests, and postage connected with the same. That on the 13th

of January, 1838, the said Bank of the Metropolis was in the possession of the bills, drafts, notes, &c., being all commercial and negotiable paper, enumerated and mentioned in the said letter from C. Hood of that date, the same having been, from time to time, transmitted by said Commonwealth Bank to said Bank of the Metropolis, in the course of their said mutual dealings and business, in letters; which letters from said Commonwealth Bank, so far as they are deemed material, are as follows (copied in the record). That each of said drafts, bills, notes, &c., was indorsed by the payees thereof, respectively, to the New England Bank, specially indorsed by the cashier of said New England Bank to the cashier of the Commonwealth Bank, and by him likewise specially indorsed to the cashier of the Bank of the Metropolis; that the same had all been transmitted within the two or three months preceding the said 13th of January; that all said paper was indorsed and transmitted in the same form in which paper the property of the bank remitting the same was indorsed and sent. That the said Commonwealth Bank failed, and became publicly insolvent, early in January, 1838, before the said letter of the 13th of January was written; that said letter contained and gave the first information, or notice, ever received by the Bank of the Metropolis, that said New England Bank was, or claimed to be, the owner of said paper so held by the Bank of the Metropolis. That the accounts between said parties, so kept as aforesaid, were regularly received by, and transmitted from, said banks respectively (the Commonwealth and Metropolis Banks), and no objection was ever made to the form or manner thereof, the last of which is here inserted (A, defendants' statement, copied in the record); that the balances were sometimes large, sometimes small, sometimes in favor of the one, sometimes of the other; that on the 24th of November, 1837, the balance was in favor of the Commonwealth Bank to the amount of $2,200; that at the time the said letter of 13th of January, 1838, was written and received, the balance due to the Bank of the Metropolis was $3,541.17½."

### Defendants' Prayer.

Whereupon the defendants, by their counsel, prayed the court to instruct the jury, —

That if, from the evidence aforesaid, they shall find that the course of dealing between the said Commonwealth Bank and the Bank of the Metropolis, as stated in said evidence, actually existed, and had continued for several years prior to January, 1838; that their dealings had been mutual and extensive; that accounts current existed between them, in which they were re-

spectively credited with the proceeds of all notes, bills, drafts, &c., transmitted to the other for collection when the same were received, and charged with all the expenses attending the same, as postage, costs of protests, &c.; that from time to time such accounts were regularly transmitted from each to the other, which accounts were mutually acquiesced in without objection; that the balances on the account current fluctuated from time to time, according to the amount of money, bills, notes, &c., remitted; that upon the credit of such negotiable paper thus transmitted or expected to be sent, or upon the credit of such mutual dealings, each party was in the practice of drawing and accepting drafts and orders on or by the other; that said banks uniformly received the notes, bills, drafts, &c., transmitted by the other for collection, and always regarded and treated them as the property of the other; that the notes, drafts, and bills enumerated in the letter from C. Hood to G. Thomas of the 13th of January, 1838, were all so received, regarded, and treated; that the defendants had no notice or knowledge, until the receipt of said letter of the 13th of January, 1838, that said Commonwealth Bank was not the absolute and only owner of the same, or that plaintiffs had any interest in, or claim to, the same; that said Commonwealth Bank became insolvent some few days prior to the said 13th of January, 1838, at which time the Bank of the Metropolis had in its possession, so held and received in the course of said mutual business, the notes, bills, &c., mentioned in said letter of 13th of January, 1838; that in the course of said mutual business, it was the practice and usage of each of said banks (the Commonwealth and Metropolis) to draw upon the other, as its exigencies or conveniences required, even beyond the amount of the balances then due to it on general account, which drafts it was also their usage and practice to accept and pay on the credit of anticipated remittances of negotiable paper or funds, or on the credit of such mutual dealings and course of business; and it was also the practice and usage of both said banks to suffer and permit ascertained balances to lie undrawn for on the same credits; that at the time the said Commonwealth Bank became insolvent, and when said letter of January 13, 1838, was written and received, there was a balance of $2,900 or other sum due on said general account from said Commonwealth Bank to the Bank of the Metropolis; — then the defendants were entitled to hold and retain the said notes, drafts, bills, &c., so in their possession, and the proceeds of the same, when received, until the tender or payment of such balance; and the plaintiffs are not entitled to recover in this action, until they show, to the satisfaction of the jury, that before action brought

such balance was paid or tendered to said defendants. Which was given.

### Defendants' Bill of Exceptions.

And thereupon, and after the court had given the said instruction to the jury on the prayer of said defendants, the plaintiff prayed the court to instruct the jury, that if, from the evidence aforesaid, the jury shall find that the notes mentioned in the said letter, dated the 13th day of January, 1838, from Charles Hood, cashier of the Commonwealth Bank, to George Thomas, cashier of the Bank of the Metropolis, were received by the said Commonwealth Bank from the said plaintiffs, and were at the time of such receipt the property of the plaintiffs.

That they were deposited by the plaintiffs with the said Commonwealth Bank, to be transmitted by it for collection only.

That the said Commonwealth Bank received the said notes only as the agent of the plaintiffs, and without giving any consideration for them, or receiving any compensation as such agent to transmit them for collection, and never had any right, title, or interest in or claim or lien upon, the said notes, except as agent as aforesaid

That the said Commonwealth Bank, as agent as aforesaid, and not otherwise, did in fact transmit the said notes to said defendant for collection o

That the said notes were indorsed by the cashier of the plaintiffs, as cashier, and by the cashier of the said Commonwealth Bank, as cashier, in the mode and form commonly used by banks in the United States in the transmission of negotiable paper deposited with, and transmitted through, such banks for collection.

That the usage to deposit in one bank such paper so indorsed to be transmitted, and for such deposit bank to indorse such paper in the manner aforesaid, and to transmit the same so indorsed to another bank, is a common usage throughout the United States, and that the custom so to indorse such negotiable paper is universal.

That the Bank of the Metropolis and the said Commonwealth Bank were extensively engaged as the agents of other banks, and with each other, in the transmission for collection and in the collection of negotiable paper belonging to third parties, in the years 1836 and 1837, in various and distant parts of the United States; and that the common form of indorsement used in the transmission of such negotiable paper by the said Commonwealth Bank and the Bank of the Metropolis was such as was

used by the said Commonwealth Bank in the indorsement and transmission of said notes, for the proceeds of which this suit is brought; and that neither of the said banks, under the said usage and custom, held the other liable upon such indorsement.

That the said notes last mentioned were transmitted to the said Bank of the Metropolis in letters, notifying the defendants that they were transmitted *for collection* in the form commonly used by said banks in transmitting negotiable paper for collection, and with no other intention as to who was the real owner of such negotiable paper; then it is competent for the jury to infer, from the facts aforesaid, that the defendants had notice that the said paper was transmitted by the said Commonwealth Bank as agent, and not as the owner thereof. And if the jury shall so find, then the plaintiff is entitled to recover, notwithstanding the jury shall find that the said Commonwealth Bank and the Bank of the Metropolis treated each other as the true owners of the paper so remitted; and notwithstanding they shall further find that balances were, from time to time, suffered to remain in the hands of each other, to be met by the proceeds of negotiable paper deposited, or expected to be transmitted, in the usual course of dealing between them; and notwithstanding the course of dealing stated in the instruction heretofore given at the instance of the defendants.

To the giving of which instruction, as prayed, the counsel for the defendant objected; but the court overruled such objection, and instructed the jury as requested; to which the defendant by his counsel excepts, and prays the court to seal this bill of exceptions, which is accordingly done, this sixth day of September, 1844.

W. CRANCH, [SEAL.]
JAMES S. MORSELL. [SEAL.]

Upon this exception, the case came up to this court.

It was argued by *Mr. Coxe*, for the plaintiff in error, and *Mr. Bradley*, for the defendant in error.

*Mr. Coxe*, for the plaintiff in error.

This cause was before this court in 1843, and is reported in 1 Howard, 234.

The proceedings remain as they originally stood. The evidence on the second trial is supposed to be substantially the same as on the first.

On the former argument, this court decided, that, wherever a banker has advanced money to another, he has a lien on all the paper securities which are in his hands for the amount of

his general balance, unless such securities were delivered to him under a particular agreement. 1 Howard, 239. That the paper in question was, however, the property of the New England Bank, and was indorsed and delivered to the Commonwealth Bank for collection, without consideration, as its agent, in the ordinary course of business, it being usual, and indeed necessary, so to indorse it in order to enable the agent to receive the money. Yet the possession of the paper was *primâ facie* evidence that it was the property of the last-mentioned bank; and, without notice to the contrary, the plaintiff in error had a right so to treat it, and was under no obligation to inquire whether it was held as agent or owner. Ibid.

The instructions asked of the court by the parties respectively are found in the present record, pp. 31 – 33. The court gave both, as asked. In the defendant's statement, the facts given in evidence are detailed. In the instruction given at the instance of plaintiff, some portion of these facts is stated. The main difference between the two seems to consist in this. In the defendant's prayer, the supposed state of facts to be found by the jury includes this, — " that the defendant had no notice or knowledge, until the receipt of said letter from C. Hood to G. Thomas, of the 13th January, 1838, that said Commonwealth Bank was not the absolute and only owner of the same, or that plaintiff had any interest in or claim to the same."

In the plaintiff's prayer, the court is called upon to instruct the jury, that " it is competent for them to infer, from the facts aforesaid, that the defendant had notice that the said paper was transmitted by the Commonwealth Bank as agent, and not as the owner"; and so finding, their verdict should be for plaintiff.

The main, if not the entire, ground upon which the plaintiff below rested, to establish this fact of notice, is the usage to deposit in one bank indorsed paper to be transmitted to a distant bank for collection, and for the bank with whom such deposit is made to indorse and transmit the same, as was done in this case.

The prayer to the court below, offered on the part of the Bank of the Metropolis, was in nearly the words of this court in the former case. (*Mr. Coxe* then read and compared the prayer with the opinion of the court in 1 Howard, 234.)

*Mr. Bradley,* for the defendant in error, laid down the following propositions : —

1st. There was evidence to go to the jury to sustain each one of the propositions stated in the prayer granted by the

Circuit Court, and the granting of which is alleged as error.

2d. The inference which the court instructed the jury it was competent for them to draw was fully justified by those propositions. And,

3d. If that inference was drawn by the jury, the instruction of the court was right.

In maintaining these propositions, it is proposed to show, —

1st. That the Commonwealth Bank was the agent of the defendant in error for a particular purpose, in the course of a well-known and long-established business, the usages of which required the employment of sub-agents, who are responsible directly to the principal, and the plaintiff in error was sub-agent.

2d. That no agreement or understanding between the agents could destroy, or in any manner impair, the rights of the principal, he being known, and not a party or privy to such agreement.

3d. That no lien could have existed in favor of the plaintiffs in error for any balance, general or otherwise, due to them from their correspondent, the Commonwealth Bank, which could attach to the negotiable paper, or the proceeds thereof, of the defendants in error, forwarded to them by that bank for collection, in the course of the regular business of collecting.

4th. There is abundant evidence to show, that the sub-agents, the plaintiffs in error, knew, or might and ought to have known, that they were not the property of the Commonwealth Bank, but had been forwarded for account of others. And

There is no error in the instruction given by the Circuit Court.

On the first proposition, *Mr. Bradley* cited 9 East, 12; 7 Bingh. 284; 6 Mass. 430; 19 Ves. 299; 1 Rose, 154, 243, 232; 1 Bos. & Pul. 648, 546.

The Commonwealth Bank was an agent in the course of a well-understood and long-established business, the course of which required the employment of sub-agents. Its whole authority was to appoint a sub-agent. Triplett v. Bank of Washington, 1 Peters, 28, 30, 35.

The known usages of trade and business often become the true exponents of the nature and extent of an implied authority; for in all such cases the presumption is, the agency is to be exercised according to the practices which are allowed and justified by such usages, &c. 2 Kent's Comm. lect. 41, pp. 614, 616 (4th ed.); Wilshire v. Sims, 1 Camp. 258; Young v. Cole, 4 Scott, 489.

A person who employs a broker must be supposed to give

him authority to act as other brokers in like cases.   Dalton *v.* Tatham, 10 Adolph. & Ell. 27, 29, 30.

A person who employs a broker on the stock exchange impliedly gives him authority to act in accordance with the rules there established, though such principal may be ignorant of the rules.

Every authority as agent carries with it or includes all the powers which are necessary or proper or usual as a means to effectuate the purposes for which it was created.   In every case it embraces the appropriate means to accomplish the end. Ekins *v.* Macklish, Ambl. 184, 186 ; Paley on Agency (Lloyd's), 198, note, 290, 291 ; 1 Livermore, 103, 104 ; Story on Agency, §§ 97, 85.

And in many cases the power to delegate his authority is implied from the ordinary custom of trade, or it is understood by the parties to be the mode in which the particular business would or might be done.   Story on Agency, § 14, cites Coles *v.* Trecothick, 9 Ves. 234, 51, 52 ; 1 Bell's Comm. 387 – 391 ; Shipley *v.* Kymer, 1 Maul. & Selw. 484 ; Cockran *v.* Irlam, 2 Maul. & Selw. 301, 303, note ; Laussatt *v.* Lippincott, 6 Serg. & Rawle, 386 ; Johnson *v.* Cunningham, 1 Alab. N. S. 249.   And wherever any express or implied authority to appoint a sub-agent is given or allowed by the principal, a privity is created between them.   Livermore, ch. 2, § 4, pp. 56 – 59 ; Story, 201 ; Goswell *v.* Dunkley, 1 Str. 681 ; and see Brandy *v.* Coswell, 2 Bos. & Pul. 438 ; Cockran *v.* Irlam, 2 Maul. & Selw. 301, 303, note ; Merrick *v.* Barnard, 1 Wash. C. C. R. 479 ; Foster *v.* Preston, 8 Cow. 198.

Second point.   That no agreement or understanding between the agents could destroy, or in any manner impair, the rights of the principal, he being known and not a party or privy to such agreement.   10 Adolph. & Ell. 27, 29, 30 ; 1 Peters, 25 ; 15 Wend. 486 ; 22 ib. 216 et seq. ; 12 Conn. 303.

3d.   That no lien could have existed in favor of the plaintiffs in error for any balance, general or otherwise, due to them from their correspondent, the Commonwealth Bank, which could attach to the negotiable paper, or the proceeds thereof, of the defendants in error, forwarded to them by that bank for collection, in the course of the regular business of collecting.   Story, Agency, § 360 and cases there cited ; ibid. §§ 362, 379, 381.

Upon the 4th point, *Mr. Bradley* entered into a minute examination of the letters and accounts.

The grounds of the former decision were two.

1st. That the Bank of the Metropolis received the paper without any notice that it was the property of a third person, and treated it as if the Commonwealth Bank was the true own-

er, and was therefore factor, broker, or banker, of the Commonwealth Bank.

2d. That balances were from time to time suffered to remain in the hands of these banks respectively, to be met by the proceeds of negotiable paper deposited or expected to be transmitted in the usual course of dealing between them.

But there is abundant evidence in the present record to show, —

1st. Notice.

2d. That they drew without regard to the balances, and also without regard to the negotiable paper.

1. As to evidence of notice.

1st. The forms of the indorsements showed that there was a bank before the Commonwealth Bank, and it " is not usual for any bank to purchase negotiable paper from another bank."

2d. All this paper was transmitted in letters notifying the Bank of the Metropolis that it was " forwarded for collection," while in regard to other paper they adopted a different form.

3d. The usage.

4th. That the parties did not hold each other liable on the indorsements.

5th. That they were indorsed and forwarded by the Commonwealth Bank to the Bank of the Metropolis, without consideration, and with notice *that they were for collection.*

2. They drew without regard to the balances, and therefore advances were not made on the faith of the notes. This is shown by the accounts current between the parties; by the correspondence between the cashiers, and by the deposition of Mr. Hood, all of which are in the record.

*Mr. Coxe,* in reply, said that this court had formerly decided, that unless the Bank of the Metropolis had notice of the ownership of the bills, it had a right to hold them for its lien. Was there such notice ? The plaintiffs below had tried to make it out, but only made out such a usage as had appeared to this court on the former trial. All the five points discussed by the counsel on the opposite side were before the court in the former case.

(*Mr. Coxe* then made an examination of them in order to show this.)

Mr. Chief Justice TANEY delivered the opinion of the court.

This case was before the court at January term, 1843, and is reported in 1 Howard, 234. The judgment of the Circuit Court was then reversed, and the case remanded, with directions to award a *venire facias de novo.*

Upon the second trial some additional testimony appears to have been offered, and two instructions given by the court to the jury, one upon the prayer of the defendant, the other upon the prayer of the plaintiff, to the last of which the defendant, who is now the plaintiff in error, excepted ; and the judgment of the Circuit Court being against him, he has again brought the case here by writ of error.

The opinion expressed by this court in reversing the former judgment and remanding the case is summed up in the following paragraph in 1 Howard, 240.

"If, therefore," say the court, "the jury find that the course of dealing between the Commonwe.lth Bank and the Bank of the Metropolis was such as is stated in the testimony ; that they always appeared to be and treated each other as the true owners of the paper mutually remitted, and had no notice to the contrary ; and that balances were from time to time suffered to remain in the hands of each other, to be met by the proceeds of negotiable paper deposited or expected to be transmitted in the usual course of dealing between them, then the plaintiff in error is entitled to retain for the amount due on the settlement of the account."

The only question now open upon this second writ of error is, whether the Circuit Court, in their instructions to the jury, have conformed to this opinion. We have examined them with a good deal of care, and regret to find them so complicated and involved, that we have some difficulty in ascertaining the meaning of the Circuit Court. It would seem to be almost impossible for a jury acting under such instructions to comprehend distinctly the issues of fact upon which they were to find their verdict. Indeed, as we understand these two instructions, the last paragraph in the second seems to this court to be inconsistent with the direction contained in the first. And if the last instruction stood by itself, without any reference to the first, it might perhaps be construed to be substantially the same with the directions given by the Circuit Court at the former trial, which were reversed upon the former writ of error.

It is not usual in remanding a case to state in the opinion of this court the particular manner in which the instructions to the jury should have been framed, but to state in the opinion the principles of law which govern the case as it appears in the record, and leave it to the Circuit Court to apply them to the case, as it may appear in evidence upon the second trial, in such manner and form as it may think advisable. From the manner, however, in which the directions of the Circuit Court appear in the record before us, upon the trial under the mandate, we may perhaps prevent future difficulty by stating the

form in which instructions to the jury might have been given so as to carry into effect the opinion of this court, and enable the jury to understand more clearly the points in issue before them. Of course we do not mean to prescribe this form to the Circuit Court when the case again comes before it, because the testimony then offered may differ materially from that now contained in the record. But if, instead of the complex instructions under which the case was decided at the last trial, the following directions had been given, it would have conformed to the opinion of this court when the case was formerly before it, and at the same time have enabled the jury to understand more distinctly the matters of fact in dispute between the parties, and submitted to them for decision

1. If, upon the whole evidence before them, the jury should find that the Bank of the Metropolis, at the time of the mutual dealings between them, had notice that the Commonwealth Bank had no interest in the bills and notes in question, and that it transmitted them for collection merely as agent, then the Bank of the Metropolis was not entitled to retain against the New England Bank for the general balance of the account with the Commonwealth Bank.

2. And if the Bank of the Metropolis had not notice that the Commonwealth Bank was merely an agent, but regarded and treated it as the owner of the paper transmitted, yet the Bank of the Metropolis is not entitled to retain against the real owners, unless credit was given to the Commonwealth Bank, or balances suffered to remain in its hands to be met by the negotiable paper transmitted or expected to be transmitted in the usual course of the dealings between the two banks.

3. But if the jury found that, in the dealings mentioned in the testimony, the Bank of the Metropolis regarded and treated the Commonwealth Bank as the owner of the negotiable paper which it transmitted for collection, and had no notice to the contrary, and upon the credit of such remittances made or anticipated in the usual course of dealing between them balances were from time to time suffered to remain in the hands of the Commonwealth Bank, to be met by the proceeds of such negotiable paper, then the plaintiff in error is entitled to retain against the defendant in error for the balance of account due from the Commonwealth Bank.

We restate the former opinion of this court in this form, because we presume it must have been misunderstood by the Circuit Court. And as it was not followed in the proceedings under the mandate, the judgment must be reversed, and the cause remanded, with directions to award a *venire facias de novo.*

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby reversed, with costs, and that this cause be and the same is hereby remanded to the said Circuit Court, with directions to award a *venire facias de novo*.