ODC COMMUNICATIONS CORP.,
Plaintiff-Appellee,

v.

WENRUTH INVESTMENTS, et al.,
Defendants-Appellants.

No. 86–2077.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1987.

Decided July 23, 1987.

James Fenton, Barrett & McNagny, Indianapolis, Ind., for defendants-appellants.

Lante K. Earnest, Klineman, Rose, Wolf & Wallack, Indianapolis, Ind., for plaintiff-appellee.

Before COFFEY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

PER CURIAM.

Wenruth Investments ("Wenruth"), appeals the district court's order of partial summary judgment in favor of ODC Communications ("ODC") on the issue of the right to prejudgment possession of a cable TV system installed at an apartment complex that Wenruth bought at a foreclosure sale. The district court expressly directed the entry of the partial summary judgment under Federal Rule of Civil Procedure 54(b) on the determination that there was "no just reason for delay." Because the claims remaining in the action before the district court are not separable from the claim on which partial summary judgment was granted for the purposes of Rule 54(b) we do not have appellate jurisdiction, and therefore dismiss the appeal.

I

While the factual history behind this litigation is somewhat involved, we detail only that portion necessary to determine our jurisdiction. The right to possession of a cable TV system in the apartment complex and its ownership lie at the heart of this dispute. The system was originally installed by Concepts Consulting, Inc., in an apartment complex at that time apparently owned (in the equitable sense) by Lawrence Realty Investors, Inc. Lawrence Realty was the mortgagor on a purchase money mortgage for the apartment complex. At the time of the installation of the cable TV system, Lawrence Realty and Concepts entered into an agreement regarding Concepts' ownership that purported to retain ownership of the system in Concepts. Lawrence Realty later defaulted on its mortgage and the apartment complex was eventually sold at a foreclosure sale to Wenruth. In the meantime Concepts evidently assigned its rights regarding the cable TV system to ODC.

Wenruth believed that it had bought the cable TV system as part of the apartment property at the foreclosure sale. ODC had a different view of the matter; it contends that it retained ownership of the system as the successor to Concepts. ODC thereupon filed an action against Wenruth in state court to regain possession of the TV system under Indiana's replevin statute. *See* Ind.Code Ann. §§ 34–1–9.1–1 to 34–1–9.1–13, 34–1–27–1 (Burns 1986). ODC also

claimed damages for the system's detention under the replevin statute, *id.* § 34–1–27–1, *see, e.g., Northern Indiana Slurry Seal, Inc. v. K & K Truck Sales,* 167 Ind.App. 440, 338 N.E.2d 704 (1975), *Lou Leventhal Auto Co. v. Manns,* 164 Ind. App. 368, 328 N.E.2d 734 (1975), and in addition filed a count claiming damages for an alleged conversion of the system by Wenruth, *see* Ind.Code Ann. §§ 34–4–30–1, 35–43–4–3 (Burns 1986). Wenruth filed a motion in state court and removed the action to federal district court on the basis of diversity jurisdiction,[1] and filed counterclaims alleging that it owned the cable TV system and claiming slander of its title to the apartment complex and damages for an alleged conversion of the system by ODC.

ODC filed a motion for an expedited hearing to determine prejudgment possession, apparently in general accord with the Indiana replevin statute's provision allowing a replevin plaintiff to request immediate, prejudgment delivery of the property by affidavit. *Id.* § 34–1–9.1–2; *see* Fed.R. Civ.P. 64. The district court set a hearing date and directed the defendant to appear to show cause why a prejudgment possession order should not issue under Indiana's procedural requirements. *Id.* § 34–1–9.1–3. At the hearing the parties and the district court all explicitly stated their understanding that the hearing was being held only to determine prejudgment possession under the Indiana replevin procedures, *id.* §§ 34–1–9.1–5, 34–1–9.1–6; *see* Fed.R. Civ.P. 64, and not to decide the ultimate issues of possession and ownership. Both sides presented documents and witnesses in support of their arguments relating to prejudgment possession, and both parties based their claims to the right of possession on claims of ownership. At the end of the hearing the district court asked the parties to file proposed "findings of fact and conclusions of law."

During the briefing period Wenruth filed a motion for summary judgment under Federal Rule of Civil Procedure 56, apparently requesting summary judgment on all claims, along with its responsive brief to ODC's brief in support of its affidavit for immediate delivery of the property. In its reply brief ODC argued for the denial of summary judgment for Wenruth and urged the district court to adopt ODC's proposed findings of fact and conclusions of law.

Upon the conclusion of this briefing schedule the district court decided both the question of prejudgment possession under Indiana's replevin statute, *see* Ind.Code Ann. § 34–1–9.1–5, and Wenruth's motion for summary judgment. The court denied the motion for summary judgment in Wenruth's behalf and instead entered a "Partial Summary Judgment" in "favor of plaintiff on Count II of the Complaint to the extent that that claim seeks the immediate return and complete possession of the subject property." The district court observed that "[t]he remaining claims of both parties (conversion and slander of title as well as the respective prayers for attorneys fees) are reserved for later consideration and disposition by the court" (parenthetical expression in original). In its order the district court directed that the cable TV system be removed from Wenruth's apartment complex by ODC or its authorized agent but that execution of the order not occur until after ten days from the date of the entry of the order under Federal Rule of Civil Procedure 62. The trial court also expressly determined that there was "no just reason for delay" and certified the partial summary judgment as a "final partial judgment as to the replevin claims" under Rule 54(b). Wenruth appeals that judgment.

## II

A certification under Rule 54(b) must satisfy three prerequisites for the appellate court to obtain jurisdiction.[2] The

---

1. ODC Communications, Inc., is a Maryland corporation qualified to do business in Indiana. Wenruth Investments is a partnership organized under the laws of Florida. ODC also sued James H. Calkins and Jay A. Rosen, apparently

individually. They are both residents of Florida.

2. Federal Rule of Procedure 54(b) provides in pertinent part:

claim certified must be separate from the remaining claims, and the judgment entered on the certified claim must be final under 28 U.S.C. § 1291. Finally, the district court must expressly determine that there is "no just reason for delay." *E.g., Curtiss-Wright Corp. v. General Electric Corp.,* 446 U.S. 1, 7–8, 100 S.Ct. 1460, 1464–65, 64 L.Ed.2d 1 (1980); *Federal Deposit Insurance Co. v. Elefant,* 790 F.2d 661, 664–65 (7th Cir.1986); *National Metalcrafters v. McNeil,* 784 F.2d 817, 820–21 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 403, 93 L.Ed.2d 356 (1986); *Stearns v. Consolidated Management,* 747 F.2d 1105, 1108 (7th Cir.1984). We review the first two prerequisites on a *de novo* standard, but review the determination regarding "no just reason for delay" on an abuse of discretion standard. *E.g., Curtiss-Wright,* 464 U.S. at 7–8, 100 S.Ct. at 1464–65; *Stearns,* 747 F.2d at 1108.

We have recently noted that " '[c]laim' under Rule 54(b) is defined with a view to avoiding double appellate review of the same issues." *Elefant,* 790 F.2d at 664. We have recognized that while claims with some factual overlap may still be separate for the purposes of Rule 54(b) "claims are not separate for Rule 54(b) purposes if the facts they depend on are largely the same, or stated otherwise, if the only factual differences are minor." *E.g., Minority Police Officers Association v. City of South Bend,* 721 F.2d 197, 201 (7th Cir.1983). In applying this test we consider whether separate recovery is possible on the claims and whether the claims would violate the prohibition against splitting claims if they were brought separately; in other words, "mere variations of legal theories do not constitute separate claims." *Stearns,* 747 F.2d at 1108–09; *Minority Police Officers,* 721 F.2d at 200; *Local P–171 v. Thompson Farms Co.,* 642 F.2d 1065, 1070–71 (7th Cir.1981). In a Rule 54(b) inquiry counterclaims are evaluated as any other claim would be. *E.g., Curtiss-Wright,* 446 U.S.

at 9, 100 S.Ct. at 1465; *National Metalcrafters,* 784 F.2d at 821.

In many settings we have had occasion to note the difficulty of applying this test. *E.g., Elefant,* 790 F.2d at 664; *Stearns,* 747 F.2d at 1108–09; *A/S Apothokernes Laboratorium for Specialpraeparater v. I.M.C. Chemical Group,* 725 F.2d 1140, 1141–42 (7th Cir.1984); *Jack Walters & Sons Corp. v. Morton Building, Inc.,* 737 F.2d 698, 701–02 (7th Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984); *Local P–171,* 642 F.2d at 1070–71. No such difficulty faces us today; there is a substantial factual overlap between the partial summary judgment determination on prejudgment possession and the remaining conversion counterclaim. Wenruth's counterclaim for conversion rests on its assertion that it owns the cable TV system. The partial summary judgment determines the ownership of that system, at least for the purposes of prejudgment possession, and probably also decides that issue for purposes of a later trial pursuant to Rule 56(d). The factual overlap regarding the issue of ownership is thus complete—it is essential to a determination of both claims. To take jurisdiction here would vitiate "the most important purpose behind Rule 54(b)'s limitations—to spare the court of appeals from relearning the facts of a case on successive appeals." *Jack Walters & Sons,* 737 F.2d at 702; *see also, e.g., Elefant,* 790 F.2d at 664; *Minority Police Officers,* 721 F.2d at 200. In addition, the counterclaim in this case is compulsory and the relief requested is in part the same. On the one hand, ODC has asked for possession of the TV system on the theory that it owns the system; on the other, Wenruth has counterclaimed for conversion of its property, and thus implicitly prayed for continued possession, on the theory that it owns the property. The certification under Rule 54(b) was thus improper in this case because the claim certified was not a

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

separate "claim of relief" from the other claims in the action.

While the relationship between the counterclaim and the claim certified under Rule 54(b) alone prevents our assumption of jurisdiction under that rule, we also note that the facts necessary to determine the counterclaim for slander of title also significantly overlap the claim for immediate possession decided in the partial summary judgment. The publication of true facts is a defense to the slander of title action, and if it is true that ODC owns the cable TV system, it cannot have slandered Wenruth's title to the apartment complex by the publication of its true claim of ownership of the TV system.

Moreover, ODC's claims for money damages for detention under the replevin statute and for money damages on its conversion claim also involve a significant factual overlap. While these claims cannot be determined without the exploration of legal issues beyond the issue of current right to possession determined in the summary judgment, the factual overlap is virtually complete. These issues are, like Wenruth's counterclaim, issues based on claims that had to be brought in this action to avoid splitting claims arising from the same transaction.

This comparison of the remaining claims with the certified issues of ownership and possession points up the fundamental flaw in believing that the issue of possession can properly be separated from the rest of the claims and counterclaims in the case and certified under Rule 54(b). Both parties based their claims to possession solely on claims of ownership. The issue of ownership is not only necessary to the determination of the right of possession, but given the parties' theories of the case, it is also necessary to every other claim and counterclaim in this action—it is a necessary element in ODC's claims for damages for detention and conversion, and it is also necessary to Wenruth's counterclaims for conversion and slander of title. Thus any appeal in the future on any of the other claims involved in this action would also present the fundamental issues of ownership and possession. This sort of piecemeal appeal is precisely the problem the appellate jurisdictional provisions seek to avoid.

■ Nevertheless, our duty to determine our own jurisdiction requires us to consider whether we have jurisdiction based on some theory other than Rule 54(b). Wenruth has suggested that we must accept jurisdiction under the line of cases initiated by *Forgay v. Conrad*, 47 U.S. (6 How.) 212 (1848) (Taney, C.J.), most notably one of our own, *Biggins v. Oltmer Iron Works*, 154 F.2d 214 (7th Cir.1946). The rule of *Forgay* is essentially that orders shall be considered final for the purposes of appeal if they threaten great hardship to a party by requiring immediate transfer of property from one party to another. While *Forgay* retains undoubted vitality its scope and application are uncertain. A commentator has concluded that the *Forgay* doctrine "is not always a rule of easy application," 9 J. Moore, B. Ward, & J. Lucas, *Moore's Federal Practice* 110.11, at 146 (2d ed., 1987 printing), and Judge Friendly, writing for the Second Circuit, once noted that Moore's conclusion "is somewhat of an understatement...." *Cinerama, Inc. v. Sweet Music, S.A.*, 482 F.2d 66, 71 (2d Cir.1973). In *Cinerama* Judge Friendly pointed out that *Forgay* has apparently been confined to judgments " 'directing immediate delivery of physical property' and ordering an accounting that has not been completed." *Id.* at 71 (quoting *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 126, 65 S.Ct. 1475, 1479–80, 89 L.Ed. 2092 (1945)). On its face, therefore, *Forgay* does not appear to reach the facts now before us, where other substantive issues exist, most notably a counterclaim that would, if successful, be inconsistent with the partial summary judgment.

Moreover, *Forgay* allows jurisdiction where irreparable harm will result if an appeal is not allowed, *see, e.g., Stable Mews Associates v. Togut*, 778 F.2d 121, 124 (2d Cir.1985) (In re *Stable Mews Associates* ), and in this case irreparable harm may be avoided if ODC posts a bond to protect Wenruth's potential interest in the cable TV system. This understanding of irrepa-

rable harm is consistent with the cases addressing the argument that writs of replevin should qualify for immediate appeal as injunctions under 28 U.S.C. § 1292(a)(1). The courts have rejected such arguments, in part on the basis that writs of replevin are interlocutory and in part on the basis that security is usually afforded, thus preventing irreparable harm. *E.g., Rosenfeldt v. Comprehensive Accounting Service Corp.*, 514 F.2d 607, 609–10 (7th Cir.1975) (Justice, then Judge, Stevens, wrote for the panel, which included Justice Clark) (citing cases); *American Mortgage Corp. v. First National Mortgage Corp.*, 345 F.2d 527, 528 (7th Cir.1965); *see also Centurion Reinsurance Corp. v. Singer*, 810 F.2d 140, 144 (7th Cir.1987) (noting that writs of replevin that are not final are not appealable since they are legal, not equitable); *but cf. Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 45–47 (1st Cir.1986) (establishing a case-by-case analysis to determine if attachment orders are appealable under section 1292(a)(1)).

A Supreme Court decision announced the year after *Forgay* also provides support for this result. In *Barnard v. Gibson*, 48 U.S. (7 How.) 650, 12 L.Ed. 857 (1849), the Court dismissed an appeal from a federal circuit court for lack of jurisdiction where an injunction in a patent infringement action appeared to threaten irreparable harm. The Court distinguished *Forgay* by noting in dicta that it thought the circuit court should dissolve the injunction but require a bond, if possible. While there would be appellate jurisdiction today under section 1292(a)(1) over facts similar to *Barnard* (since an injunction was in question), *Barnard* is relevant to the facts in the case before us, since, as we have just noted, there is no appellate jurisdiction under section 1292(a)(1) over interlocutory writs of replevin. *Barnard's* reasoning is thus directly applicable to the situation before us here, for here irreparable harm may also be avoided by the posting of a bond. Thus cases generally addressing the effect of irreparable harm on appellate jurisdiction suggest that appellate courts should not accept jurisdiction of interlocutory orders where irreparable harm may be avoided.

The cases following directly from *Forgay* also suggest the same result. *Forgay* itself involved an order in a bankruptcy case requiring the immediate transfer of property to an assignee by a bankrupt. The *Biggins* case in this circuit did not rely directly on *Forgay* but cited a Tenth Circuit case applying it, *Biggins*, 154 F.2d at 218 (citing *Kasishke v. Baker*, 144 F.2d 384, 385–86 (10th Cir.1944)), in order to find jurisdiction. In *Biggins* the trial court had ordered partial summary judgment on amounts owed to the plaintiff as evidenced by two checks and had ordered immediate transfer of the amounts represented in those checks from the defendant to the plaintiff without any security to protect the defendant. *Id.* at 217–18. The posture of the case at bar, as we understand it, falls outside of the general rule applied in the *Forgay* cases. The fundamental concern allowing jurisdiction in cases under the *Forgay* doctrine is the threat of immediate irreparable harm that may only be tested if appeal is allowed directly from the order to transfer property. *See, e.g., Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 122–25 & n. 1, 65 S.Ct. 1475, 1477–79 & n. 1 (1945). The record before this court does not suggest that irreparable harm will occur if we do not at this point consider the appeal from the district court's partial summary judgment. Instead, the record in this case superficially appears to allow two differing interpretations. Either the district court meant in the "partial summary judgment" to dispose only of the question of prejudgment possession and perhaps foreclose further argument regarding that issue at trial pursuant to Rule 56(d), or the court meant to dispose finally of the ownership (and therefore the possession) issue. If the court meant to rule only on prejudgment possession, it is somewhat curious that the court did not mention the bond Indiana courts would require ODC to post in order to secure Wenruth from irreparable harm should Wenruth win on its conversion counterclaim (which still stands). *See* Ind.Code Ann. § 34-1-9.1-6 (Burns 1986). However, the district court's silence on that issue does not conclusively estab-

lish that the order was meant to be a final judgment, for the district court may simply have not considered whether a bond should issue. Thus while the failure to mention a bond in the order raises a question regarding the judge's intention it is not conclusive.

The more problematic reading of the district court's order in light of the record would be to read the order as final and to award ODC permanent possession of the cable TV system (rather than simply awarding prejudgment possession to ODC and conclusively determining the issue of the right of possession prior to trial in accordance with Fed.R.Civ.P. 56(d)). If that was indeed the district court's intent, it is difficult to square with the court's decision not to decide Wenruth's counterclaim, since as long as that counterclaim stands there is a chance (at least theoretically) that Wenruth will prevail on it and thus prove that in fact *it* is the true owner of the system.

We are reluctant to decide that the district judge intended to choose the more extreme alternative of disposing finally of the ultimate question in the lawsuit, the right to ownership and permanent possession. We instead believe that the district judge intended to decide only the prejudgment possession question and to determine the issue of possession in accordance with Rule 56(d). This is consistent with the remarks of the judge and counsel at the commencement of the prejudgment possession hearing. This action is, after all, an action under Indiana's replevin statute, *see* Fed.R.Civ.P. 64, and both parties and the court have treated it as such throughout the proceedings below. Both parties and the court had, up until the promulgation of the order granting partial summary judgment, followed the Indiana replevin statute's requirements step by step. Thus notwithstanding whatever label adorned the

district court's order, the fact remains that the order resolved both the motion for immediate possession under Indiana's replevin statute and Wenruth's motion for summary judgment.

This conclusion is in no way in conflict with the experienced district judge's findings of facts and conclusions of law; both parties claimed a right to prejudgment possession based on claims of ownership. Thus the district judge's opinion and order were of course based on its resolution of those claims.[3]

Labelling the order a "partial summary judgment" is, of course, consistent with section (d) of Rule 56, which allows a court to establish facts prior to trial over which there is no "substantial controversy." And we have noted in an earlier case questioning jurisdiction under Rule 54(b) (and finding none) the inherent ambiguity of the term partial summary judgment:

> We can get no help from the caption of the judge's order. The word "judgment" in the term "partial summary judgment" is a misnomer. A partial summary judgment is merely an order deciding one or more issues in advance of trial; it may not be a judgment at all, let alone a final judgment on a separate claim.

*Minority Police Officers,* 721 F.2d at 200. In sum, we cannot on this record say that Wenruth will not be provided the security (in the form of a bond obtained by ODC) Indiana law requires to ensure that Wenruth faces no chance of immediate and irreparable harm. The record before us suggests that such a bond would protect Wenruth from the threat of irreparable harm.[4] *See* Ind.Code Ann. § 34–1–9.1–6 (Burns 1986) (the amount fixed by the court binds the plaintiff to the defendant for "the value of the property, as determined by the court, along with such other damages as the defendant may suffer if

---

**3.** We of course do not in this opinion in any way draw into question the findings of fact and the conclusions of law the able district judge made regarding the replevin issue.

**4.** While the parties' supplemental briefs contain some unfocused discussion of the harm that execution of the replevin order would entail,

they have not addressed the issue directly, especially insofar as it relates to the *Forgay* doctrine. Thus it is conceivable that there are relevant facts regarding irreparable harm that are not contained in the record on review before us today. The parties will of course be free to present any such facts to the district court.

the property has been wrongfully taken from him"). Therefore, the extraordinary and narrow doctrine of jurisdiction outlined in *Forgay* and its progeny does not apply to this action.[5]

### III

We decline to exercise appellate jurisdiction; therefore the appeal is

DISMISSED.

---

**5.** We have not in this action been presented with the issue of whether this court could or would take jurisdiction of this case under 29 U.S.C. § 1292(b), and thus our decision today expresses no opinion on that subject.