KATAHDIN PULP & PAPER CO. v. PELTOMAA.

(Circuit Court of Appeals, First Circuit. October 1, 1907.)

No. 697.

1. DAMAGES—PLEADING AND PROOF—PERSONAL INJURIES.

Under a declaration, in an action for personal injury, which describes the wounds received by plaintiff, evidence is admissible, under the settled rules stated in Chitty on Pleading, 411–414, with respect to injuries not described, but which naturally resulted from such wounds, as affecting the amount of damages recoverable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 441, 442.]

2. APPEAL AND ERROR—RESERVATION OF GROUNDS OF REVIEW—EXCEPTIONS.

An exception by a defendant to testimony brought out by him on cross-examination of a witness for plaintiff, and a motion to strike out such testimony, are insufficient under the circumstances according to the practice of the federal courts to raise any question for review by the appellate court, where the record does not show that any grounds for either were given or any reason shown why the testimony was improper.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 1141.]

3. TRIAL—INSTRUCTIONS—CONSTRUCTION OF CHARGE AS A WHOLE.

In an action by a servant against the master to recover for a personal injury alleged to have been caused by a defective appliance furnished by the defendant, expressions used by the court, in its charge, that, under the circumstances, it was the duty of defendant to furnish and maintain reasonably safe appliances, are not ground for reversal, where the duty of defendant was elsewhere explained as not being absolute, and where at defendant's request the jury were specifically instructed at the close of the charge that it was the duty of the defendant only to use reasonable and ordinary care.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 703–717.]

In Error to the Circuit Court of the United States for the District of Maine.

For opinion below, see 149 Fed. 282.

George E. Bird (E. C. Ryder and William M. Bradley, on the brief), for plaintiff in error.

William A. Pew, Jr. (William H. Gulliver, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. Throughout we will speak of the plaintiff below and the defendant below as the plaintiff and defendant. This case was tried to a jury with a verdict for the plaintiff. It was claimed that the plaintiff was employed by the defendant, and, while in that employment, was using a derrick which was supplied by the defendant as a complete derrick, and that one of the guys was weak through age, and therefore broke, so that the derrick fell on the plaintiff and injured him. The court having properly instructed the jury on the question whether this derrick was to be regarded as a completed structure furnished as such by the defendant, the verdict obviated all questions

except such as arose out of the conditions by virtue of which it was so to be regarded. Six alleged errors were assigned, but only three are brought to our attention.

The allegations in the declaration of the damages suffered by the plaintiff are as follows:

"That by reason of the said falling of said derrick the said plaintiff was greatly injured on the head and shoulders, by the infliction of a deep and painful wound, his left arm was broken in two places, and he was otherwise greatly injured in other parts of his arms, legs, and sides, and that the said plaintiff suffered great pain in body and mind as the result of said injuries, and is permanently injured, and is unable to perform any manual labor, and is deformed and crippled for life, and has been put to great expense for medical attendance, nursing, and medicine, to the damage of the plaintiff in the sum of $10,000, which shall then and there be made to appear with other due damages."

There was no allegation of a nervous disturbance, or of any injury to the nervous system. Evidence was offered, and admitted against the objection of the defendant, tending to show that the external wounds described in the declaration were the cause of certain nervous disturbances and of other internal injuries. Exception was duly saved, but the exception clearly is not sustainable according to the decisions of the courts in Maine, which state composes the district in which the injury was suffered and the judgment rendered. There was enough in what the declaration contained to be equivalent to the ordinary alia enormia; and, without that, inasmuch as the injuries to which the evidence objected to related not only resulted from the wounds described, but naturally resulted therefrom, the thoroughly settled rules of the common law, which are also fully accepted in Maine, determine that no specific description thereof was required. Chitty on Pleading, 411* to 414*.

While the plaintiff was endeavoring to prove that one King, who was employed by the defendant, was a vice principal, and not a fellow servant, a question was put on that topic referring to a date later than that of the injury. This was objected to as irrelevant, and as having a tendency to confuse the jury by reflected light on the question of King's relations to the defendant at the essential time. This evidence was apparently irrelevant; but it could not have been at all injurious, because the case so shaped itself that it was wholly nonessential whether King was a fellow servant in the ordinary sense of the word, or a vice principal in the ordinary sense of that word. Under the law as ruled in the federal courts, this could not have been an important question in the present aspect of the case. Baltimore & Ohio Railroad Company v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Central Railroad Company v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418; McPeck v. Central Vermont Railroad Company, 79 Fed. 590, 25 C. C. A. 110, decided by us on March 23, 1897; Stevens v. Chamberlain, 100 Fed. 378, 40 C. C. A. 421, decided by us on February 2, 1900.

Another proposition brought to our attention is that the testimony of one of the plaintiff's witnesses, brought out on the cross-examination by the defendant, in regard to the number of guys suitable for a derrick, should have been stricken out on a motion which the defend-

ant made for that purpose. The record shows that an exception was taken, but it does not show any reason given to the court by the defendant why he claimed that the evidence should be stricken out; nor does it state the grounds of the exception. Therefore the record does not disclose that it was shown to the Circuit Court that in any aspect of the case the evidence would have been improper even if put in by the plaintiff. The objection and the exception are insufficient under our practice, and all the more so in view of the fact that the evidence was put in by the defendant itself, so that the question whether it should be stricken out or not was prima facie one for the the discretion of the court at nisi prius.

The remaining question relates to the law as to the nature and extent of the care required from the defendant, growing out of the fact that the derrick was furnished by it to the plaintiff and his fellow workmen as a completed structure for use by them. There is no doubt as to the rule of the federal courts on this topic. It has been rehearsed again and again, and as correctly as anywhere in Hough v. Railway Company, 100 U. S. 213, 218, 25 L. Ed. 612, as follows:

> "To guard against misapplication of these principles, we should say that the corporation is not to be held as guaranteeing or warranting the absolute safety, under all circumstances, or the perfection in all of its parts, of the machinery or apparatus which may be provided for the use of employés. Its duty in that respect to its employés is discharged when, but only when, its agents whose business it is to supply such instrumentalities exercise due care as well in their purchase originally, as in keeping and maintaining them in such condition as to be reasonably and adequately safe for use by employés."

There is no claim that this rule was not given by the learned judge of the Circuit Court, and the question before us arises out of the fact that he dropped into an expression which the defendant says is not consistent with the rule, so that it also says that the whole tended to confuse the jury. Thus the defendant seeks to bring itself within Bank of Metropolis v. New England Bank, 6 How. 212, 226, 12 L. Ed. 409, to the effect that, where the instructions are involved, a new trial will be ordered; and, also, within Armour & Co. v. Russell, 144 Fed. 614, 615, 75 C. C. A. 239, decided by the Circuit Court of Appeals for the Eighth Circuit on March 21, 1906, where it is stated that the vice of a wrong rule in a charge is not extracted by the fact that the right rule is also given, "because," as the court says, "it is impossible to tell by which rule the jury was governed."

This objection, however, melts away on a careful examination of the record. The defendant admits that the correct rule was given five times, while it claims that the alleged incorrect rule was also given six times. It will be found, however, that what the defendant claims to be the incorrect rule was accompanied every time with what is admitted to be the true rule, and that finally the true rule was given absolutely and unqualified by anything else. We will give the first example of what the defendant rests on in this connection. It gives undoubtedly the most plausible support to the defendant's position of any extract which can be made from the charge. It is as follows:

> "Now, the master, the employer of laborers, has a duty upon him to see that a reasonable place is given to the laborer in which to work. He is not an

insurer of that place, but it is his duty to give him a reasonably safe place in which to work. It is his duty, also, to give him reasonably safe appliances with which to work. In this he is not an insurer. A reasonably safe appliance may break, but it is the duty of the employer, the master, to provide the servant, the employé, with reasonably safe appliances, and the place of work and the appliances must be reasonably safe when you take into consideration the nature of the work, the character of the occupation. It is not sufficient for the plaintiff, the employé, who sues the master, to show that an accident happened. He must show that it happened through the neglect of the employer, through his failure to exercise reasonable care in furnishing a suitable place or a suitable appliance; that either a suitable place was not furnished; or that by reason of such want of reasonable care he, the employé, the servant, suffered."

If this stood alone, it might perhaps be held to be subject to the criticisms of the cases we have cited. The next instance on which the defendant relies is as follows:

"Now, starting with the instructions which I have given you as to your duty, if he has satisfied your mind on that proposition, that the defendant company had not reasonably met that duty of providing a suitable appliance, namely, a suitable rope to the derrick, and that, through its neglect to provide that, the plaintiff has suffered, so far he may recover, so far as that proposition is concerned."

This is fairly subject to the same observations as the first extract we have given. Subsequently to the above, the court said:

"It is the duty of the defendant company, and of any person employing men, to provide reasonably suitable appliances; as I have said, they are held to reasonable care in this behalf."

This exhibits in a succinct form the features in the charge to which the defendant objects. The following extract, however, which succeeds in the charge all we have stated, must be held, of course, to supersede what the court had already said, and fairly exhibits the extent to which the defendant's criticisms can be applied:

"I instruct you that, from the testimony in the case, you are justified in finding that Mr. Jones was the general manager of the defendant company; that he had general charge of the company's business. Among other things, he had the duty of seeing that a reasonably safe working place was maintained for its employés and servants, and that reasonably safe appliances were furnished them, for their work. In the performance of this duty as general manager he was not a fellow servant of the plaintiff, but was a vice principal and representative of the defendant company. If he was negligent in the exercise of these duties, the jury is justified in finding defendant liable. If the general manager, the vice principal of the defendant, knew, or from the nature of the case ought to have known, that the guy line of the derrick was not reasonably safe for use, and, knowing such condition of the guy line, he did not have such line removed, or if he negligently sanctioned its use under circumstances when the guy was likely to break and cause injury to the employés of the defendant company, and if the jury finds that he was guilty of negligence in this behalf, they are justified in finding such negligence to be the negligence of the defendant company. If the injury happened through the breaking of a guy, and if that guy was defective and unsafe, and if its appearance was such that the defect might have been discovered by the exercise of reasonable care on the part of the general manager, the vice principal of the company, and if he failed to discover the defect in the guy or to remedy the same, such failure the jury may take into consideration as evidence tending to show negligence on the part of the defendant company itself."

While the first extract we have given from the charge might be subject to the criticism found in Bank of Metropolis v. Union Bank, this full and careful explanation to the jury is not; but, if subject to any criticism, it is to that found in Armour & Co. v. Russell, on the point that inconsistent rules were given. The defendant rests on the proposition that the word "duty" was so used as to leave the jury an opportunity of understanding that the duty is not a qualified one; but this is not the fair interpretation to be put on this method of expression. It is impossible for either courts, or any human agency, dealing with the English language, to use words or terms which in all respects qualify and limit their application as they should be qualified and limited, without additional expressions intended so to qualify and limit. When the learned judge used the word "duty," it was used in a general sense, covering both qualified and unqualified obligations; and immediately, and almost in the same breath, he went on to explain to the jury that the duty is not unqualified, but is qualified in the way in which he explained. In this respect the court followed an ordinary method of expression among men using common phrases, and, also, with men of the highest literary exactness. The Supreme Court proceeded in the same way in which the learned judge proceeded in Union Pacific Railroad v. Daniels, 152 U. S. 684, 689, 14 Sup. Ct. 756, 38 L. Ed. 597. At the middle of page 689 of 152 U. S., of page 758 of 14 Sup. Ct. (38 L. Ed. 597), the opinion quoted the words "owes a positive duty," without any qualification whatever. And, again, at the foot of the page, it used equally positive language of a generic character.

At bar, after the judge completed his charge, the counsel for the defendant said to the court as follows:

"We would ask, if your honor please, that you charge the jury that it is only the duty of the defendant to use reasonable and ordinary care to provide a reasonably safe place and a reasonably safe appliance."

The court replied as follows:

"I give you that instruction, gentlemen. I repeat, I give it to you coupled with what I have already said."

It is, perhaps, true that, under the circumstances, the defendant was entitled to the instruction clean, without any addition, or any reference to what the court had previously said. Nevertheless, it is not clear what the court meant by that reference. The defendant maintains that it referred to the previous expressions which the defendant contends indicated that there was an absolute duty on the part of the defendant. The plaintiff says it referred to that part of the charge which immediately preceded the request made by the defendant, and which related to the question whether or not the derrick was a completed structure furnished as such by the defendant. To this time, however, there had been no exception taken to the charge. One was taken here, and that was limited, and limited in a way which we do not understand. It was as follows:

"We would like to object to that portion of the charge just now given in which it is stated that the instructions heretofore given this morning are the same as just now given as to the duty of the master to employ reasonable and ordinary care to provide reasonably safe appliances for the workmen."

We do not find that the court anywhere stated as said in that exception. We do not understand the exception, and we presume the court did not understand it. However, the matter seems to have been fully cleared up subsequently. The objection was restated by the defendant as follows:

"We would like, if your honor please, to have an instruction to the effect that it is only the lack on the part of this defendant to use ordinary and reasonable care to discover the defect that can render it liable; not that it is an insurer; not that it is a guarantor; but that it must from time to time, from day to day, exercise reasonable care to discover defects."

Thereupon the court said as follows:

"I told you [meaning undoubtedly the jury], in terms, that the defendant company was not an insurer of the appliance, but that it should use ordinary care in supplying a suitable appliance; that, if defects occurred, it should use ordinary care in discovering those defects; and that it is responsible only for ordinary care in that behalf."

Here we have finally the precise rule of the law and the precise rule claimed by the defendant, whatever suggestions may be made as to what preceded. The court thus met the requirements of Livingston v. Maryland Insurance Company, 7 Cranch, 506, 544, 3 L. Ed. 421, and Canney v. Walkeine, 113 Fed. 66, 68, 51 C. C. A. 53, 58 L. R. A. 33. We do not see how the jury could have misunderstood this, or how, after this, it can be said that there was any error in the charge of the court; and we perceive no error in the record in any particular to which our attention has been called.

The judgment of the Circuit Court is affirmed, with interest, and the defendant in error recovers his costs of appeal.