## MAHONING ORE & STEEL CO. v. BLOMFELT.

### (Circuit Court of Appeals, Eighth Circuit. August 5, 1908.)

### No. 2,830.

1. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK.

An employé of a mining company who had been working for several months as a brakeman engaged in the moving of dump cars by means of an engine, and who had knowledge of the means used for coupling to such cars, assumed the risk from such means, and there can be no re-

covery from the company for his death resulting therefrom, where the couplers were in good condition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 574-600.]

2. NEGLIGENCE—ACTIONS—WHEN QUESTION FOR JURY.

Where there is uncertainty as to the existence of negligence or contributory negligence arising from conflicting testimony, the question is one of fact, to be determined by the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, §§ 277-353.]

3. MASTER AND SERVANT—DEATH OF SERVANT—ACTION—QUESTION FOR JURY.

An engineer operating an engine employed in moving dump cars at a mine backed his engine against a car to which it was to be coupled with such force that the sloping end of the tender was forced beneath the car, raising it from the track, and crushing and killing a brakeman who was standing on the running board at the rear of the tender to make the coupling. The engineer knew that there was no bumper on the car which would prevent such an occurrence, and also that it was necessary for the brakeman to be between the engine and car to make the coupling. *Held*, that evidence showing such facts was sufficient to require the submission of the question of the engineer's negligence to the jury in an action to recover for the death of the brakeman.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1051-1067.]

4. SAME—FELLOW-SERVANT LAW OF MINNESOTA.

The fellow-servant law of Minnesota (Gen. St. Minn. 1894, § 2701), as construed by the Supreme Court of the state, applies to a mining corporation which is not a railroad corporation, but which operates a short line of railroad in mining its ore, and under such statute a brakeman employed on such road does not assume the risk from negligence of an engineer also so employed.

5. WITNESSES—EXAMINATION—REDIRECT EXAMINATION.

Permitting a witness to be interrogated on redirect examination with respect to matters first brought out on cross-examination is not prejudicial error, even though the testimony may be irrelevant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 1004.]

6. EVIDENCE—OPINION OF EXPERT—COMPETENCY.

Upon an issue as to the negligence of a railroad engineer in running his engine against a car to which it was to be coupled with such force as to crush the brakeman who was between the two for the purpose of making the coupling, it was competent to show by an engineer of experience within what distance the engine could have been stopped.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2323.]

7. DEATH—ACTION FOR WRONGFUL DEATH—RIGHT OF NONRESIDENT ALIEN TO BENEFIT OF STATUTE.

The Minnesota statute giving a right of action for wrongful death for the benefit of the next of kin of the deceased, as construed by the Supreme Court of the state, includes among its beneficiaries a nonresident alien having the prescribed relationship.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, §§ 35-46.]

In Error to the Circuit Court of the United States for the District of Minnesota.

Thomas J. Davis (Theodore Hollister, on the brief), for plaintiff in error.

Clarence B. Miller (Harvey S. Clapp, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and W. H. MUNGER, District Judge.

W. H. MUNGER, District Judge. This action was brought by William Blomfelt, as administrator of the estate of Oscar Blomfelt, to recover damages for the wrongful death of said Oscar Blomfelt. The complaint alleges that deceased was about 24 years of age; that he left surviving him as only heir and next of kin his father, about 56 years of age; that the father was dependent upon deceased for maintenance and support; that the deceased was in the employ of the defendant, a mining corporation; that defendant in the operation of its mines operated a railroad, with various tracks, engines, and other appliances; that the deceased was in the employ of defendant as a brakeman, and that on the 12th day of August, 1905, while in the performance of his duties as a brakeman, he received the injury resulting in his death. It is alleged that said injury was caused, first, because of the negligence of the defendant in providing an improper coupling appliance which was worn out, dangerous, and defective; second, that the engineer operating the engine of the train upon which deceased was a brakeman operated the same in a careless and negligent manner by backing or running the engine with unnecessary, unusual, and violent force back against a car, between which and the engine deceased was required to be in the performance of his duty to couple the engine and car together, by reason of which deceased was crushed and mangled in a manner producing his death. Defendant in its answer denies the alleged acts of negligence, alleges that deceased was himself guilty of negligence, and that the risks and dangers connected with the work in which he was engaged were risks which he assumed; further denied that the father was his heir and next of kin.

It appears from the testimony: That the defendant was the owner of an iron mine. That it was engaged in stripping and removing the surface earth from the body of the iron ore. In doing this a steam shovel was employed, which removed the earth and loaded it upon dump cars standing upon the tracks for that purpose. That, when said dump cars were filled, they were removed by engines and unloaded at a place designated as the dump. In removing the earth there were eight or ten cars used in each train, and in going to the dump were pushed in front of the engine. Returning the cars were pulled by the engine backing. The front car was one which dumped at the end or forward. The others dumped at the side. On the day on which the injury happened there were some five or six of these dump cars standing on one of the tracks, loaded with coal used in the operation of the train and the steam shovel. It became necessary to move the cars containing coal from the place where they were standing, and this was sought to be done by the train upon which deceased was a brakeman. The train was returning from the dump with some eight or ten empty cars. In moving the coal cars from where they were standing, it was sought to push them some distance further up the track. To do this it was necessary to couple the engine on to the nearest one of the cars of coal, which was an end dump car; the dump end being next to the engine. The coupler of the end dump car was in under the end of the car some little distance, so that it required a link about three feet in length to couple on to the engine. This link was constructed of a flat bar of iron, with loops in each end, and strips or pieces of wood bolted

to the bar of iron, so that the bar of iron extended, at each end, some five or six inches beyond the strips of wood, forming at the ends a loop something in the shape of a clevis, and a pin was used in making the coupling. To make this coupling it was necessary for the deceased, as brakeman, to go in between the engine and the car. The tank or tender of the engine sloped down towards the end, the end of the slope was a few inches lower than the bed of the box of the dump car, and there was a running board at the end of the tender on which the deceased stood. In making the coupling on this occasion the engine and the dump car came together in such a manner that the end of the dump car was raised up on to the sloping end of the tender of the engine sufficient to raise the wheels of the car from the track, and deceased was crushed between the end of the tender and the dump car.

As to the allegation of negligence because of the use of this character of coupling link, plaintiff was not entitled to recover, for the reason that there was no evidence tending to show that it was not in perfect condition. That method of coupling was well known to deceased, who had been in the employ of the defendant as a brakeman for several months, and, if it was a negligent method, it was a risk which he assumed.

The grade of the track was some 5 or 6 per cent, and it appears from the testimony that the engineer backed his engine upwards toward the cars of coal for the purpose of coupling, but did not get near enough for that purpose. The engineer ran his engine forward some 20 or 30 feet, and then backed again; this time the engine and car coming together. Two theories are advanced. On the part of the plaintiff it is claimed that the engineer in his second effort went back with such unnecessary force and velocity that the rear end of the tender was propelled underneath the end of the dump car, crushing deceased, and raising the end of the dump car on to the tender of the engine, as before stated. On the part of the defendant the theory is advanced that just before the engine reached the cars of coal in the second effort it came to a stop, deceased went between the several cars of coal, unloosened the brakes, signaled the engineer to back, stepped on the running board between the engine and the dump car to make the coupling; that the engineer had propelled the cars back some 10 or 15 feet, when he discovered the end of the dump car upon the tender and immediately stopped, stopping, as he says, within 1 or 2 inches; that the brakeman either did not make a secure coupling, or else, after the engine started to push the cars, he withdrew the pin. There being somewhat of a curve in the track, if the pin was not inserted, or was withdrawn, it would naturally slip out of the coupling bar at the end of the tender. There was substantial evidence in the case which supported each theory. The trial court submitted the case to the jury and they returned a verdict for the plaintiff.

It is urged with much persistency that the evidence considered as a whole fails to show any negligence upon the part of the engineer. The evidence being conflicting, it was the province of the jury to determine the facts. As said by the Supreme Court, in Richmond R. R. Co. v. Powers, 149 U. S. 43–45, 13 Sup. Ct. 748, 37 L. Ed. 642:

"It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury, and this whether the uncertainty arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them."

The jury having found the theory of plaintiff to be the true one, what then was the duty of the engineer? He was familiar with the coupling apparatus, he knew that there was no bumper on the dump car extending beyond the end, with which the bumper upon the engine would come in contact, so as to prevent, if the coupling was not made, the end of the car and the tender of the engine from coming in contact, and he must have known that the coupling could only be made by the brakeman when being between the engine and the end of the dump car. It was his duty, then, to have his engine under such control as not to permit it to come in contact with the end of the car with such speed and force as would prevent the brakeman from escaping. As stated, the evidence is conflicting, but we think there was evidence which warranted the jury in finding that the engineer did not exercise ordinary care under the circumstances in backing his engine. While it is true that the undisputed evidence shows that he made one effort and failed to get his engine back near enough to the dump car to make the coupling, and that he pulled forward a short distance and came back again, the fact, however, that he failed to get far enough back in his first effort, was no justification for his coming back the second time with force sufficient not only to crush deceased, but to raise the end of the dump car off the track and part way up on the sloping end of the tender. The court, therefore, did not err in submitting the question of the engineer's negligence to the jury.

Under the statutes of the state of Minnesota, as construed by the Supreme Court of the state in Kline v. Minn. Iron Co., 93 Minn. 63, 100 N. W. 681, and by this court in Kibbe v. Stevenson Iron Mining Co., 136 Fed. 147, 69 C. C. A. 145, deceased did not assume the risk of negligence of the engineer, a co-employé. Nor do we think it can be said that the deceased himself was guilty of contributory negligence. The coupling was not an automatic coupling, and it is clear from the evidence that it could only be made by inserting a pin through the coupler between the end of the tender and the end of the dump car; that, to perform this duty, it was necessary for deceased to be in between the car and engine.

At the trial William Blomfelt, brother of deceased, was called by the plaintiff as a witness, and testified, upon his direct examination, to the deceased sending money at various times to his father in the old country. On cross-examination by defendant he was interrogated, not only as to the deceased sending money to his father, and the manner in which the same was sent, but witness was asked with reference to whether he himself sent money to his father. On redirect examination he was asked if he sent his money in the same way his brother did, to which defendant objected, and excepted to the ruling of the court admitting the evidence. Objections and exceptions were also taken to the witness being asked to whom money orders were to be paid that he saw his brother send; the answer being to his father. The

witness upon his direct examination by plaintiff was not interrogated as to the sending by himself of money to his father. His direct examination was limited to the sending of money to his father by the deceased. The fact that the witness had sent money to his father, and the manner in which the deceased sent the money, was first called out upon cross-examination. For this reason we do not think the questions asked and objected to on redirect examination prejudicial error.

During the examination on the part of counsel for plaintiff of one Matthew J. McGovern, a witness who had been a locomotive engineer for some two years, he was asked the following question:

"Within how many inches could that engine be stopped, or should it be stopped, going up there in that way?"

To this question the following objection was interposed:

"There is nothing in the complaint here that makes anything of this kind relevant. Not suggested here that this engine was given a signal to stop that he didn't obey—anything of that sort. There is not anything here to predicate any negligence on the failure to stop the engine quicker than it was stopped."

We do not think this objection well taken. The distance within which the engine could have been stopped was competent and material. The distance within which it should be stopped was incompetent, as that was for the jury to determine. But the objection was not based upon that ground. The trial court's attention was not challenged to the objectionable portion of the question in that respect, and we do not think the objection available. But, considering the whole testimony of the witness in this respect, we think the jury must have understood that his evidence related to the distance within which the engine could have been stopped, and not to the distance in which it should have been stopped.

Defendant asked the court to instruct the jury as follows:

"It was the duty of the deceased in the performance of his work to use the appliances furnished him in a reasonably careful manner, and if the jury believe that the deceased received his injury while attempting to couple the coupling bar to the engine, while standing on the foot board, and further believe that to do so was obviously more hazardous than to make the last coupling at the end of the bar next to the car standing upon the ground, deceased would be held to have assumed the risk of adopting the more dangerous method."

This instruction was given by the court with the following addition:

"And if the jury believe from the evidence that his attempting to make the coupling in that way contributed to the happening of the accident, and the consequent injury—that is, that but for his attempting to make the coupling in that way the accident would not have happened—there can be no recovery."

It is insisted that the instruction as requested succinctly and properly stated the rule of law applicable to the case, and that its force was destroyed by the addition thereto by the court. We fail to perceive how the addition to this instruction in any way qualified the instruction as requested. It was proper for the court to instruct the jury in effect, not only that he assumed the risk of the more dangerous method stated, but also that it must appear that such more dangerous method contributed to the happening of the accident and the

consequent injury; and the court did not err in giving this additional instruction.

The court was requested to give the following instruction:

"In this action it appears that there is no beneficiary of the deceased except his father, a nonresident alien, and the jury are charged that no verdict can be allowed because of the death of the deceased for the benefit of a nonresident alien."

The refusal to give said instruction is assigned as error.

In Renlund v. Commodore Mining Co., 89 Minn. 41, 93 N. W. 1057, 99 Am. St. Rep. 534, the Supreme Court of the state construed the statute, and held that nonresident aliens who are next of kin are entitled to its benefits. The construction of the statutes of a state by its highest court is binding upon this court. In Patek v. American Smelting & Refining Co., 154 Fed. 190, 83 C. C. A. 284, this court gave to a similar statute of Colorado the same construction. The requested instruction was therefore rightfully refused.

The case was clearly and fairly submitted by the court to the jury and the judgment is affirmed.