BISHOP v. WIGHT.

(Circuit Court of Appeals, Eighth Circuit. February 17, 1915. Rehearing Denied May 3, 1915.)

No. 4092.

1. EVIDENCE ☞514—OPINION EVIDENCE—SUBJECTS OF EXPERT TESTIMONY.

A question asked an expert witness as to the distance within which an electric coupé could have been stopped after a five-passenger touring car came in contact with one of the front wheels, turning the wheels towards the curb, assuming that the electric car was operating under the first or second speed, was properly excluded as calling for a matter which was not a proper subject for expert testimony, as the expert could have formed no more accurate judgment of the effect of the impact of the touring car against the electric coupé than the jury could form for itself, and the only aid he could have given would have been for him to have stated within what distance a vehicle of the type in question and running at the rate given could have been stopped.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2319–2323; Dec. Dig. ☞514.]

2. MUNICIPAL CORPORATIONS ☞706—INJURIES FROM NEGLIGENT USE OF STREETS—QUESTIONS FOR JURY.

Where, in an action for the death of a person struck by an electric automobile while on a sidewalk, the evidence showed that defendant was driving his car with due care when another automobile came in contact with one of the front wheels of his car, turing the wheels towards the curb, and so displacing the steering mechanism and power control as to temporarily render the car beyond defendant's power to control it, and that he did all he could to stop the car before striking deceased, a verdict for defendant was properly directed.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. ☞706.]

T. C. Munger, District Judge, dissenting.

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by Edna F. Bishop against George Wight. Judgment for defendant, and plaintiff brings error. Affirmed.

Hughes & Dorsey and E. I. Thayer, all of Denver, Colo., for plaintiff in error.

Henry E. Lutz, of Denver, Colo., for defendant in error.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOU-MANS, District Judges.

YOUMANS, District Judge. Edna F. Bishop brought suit in the state court against George Wight for the alleged negligent killing of her husband, Samuel E. Bishop, and the case was removed to the federal court, where, upon trial, at the conclusion of the evidence, the jury was directed to return a verdict for defendant.

There are 32 assignments of error. In the brief for plaintiff in error these are reduced substantially to 2: That the court erred: (1) In directing a verdict in favor of the defendant. (2) In refusing to permit plaintiff's counsel to ask the witness Metz, testifying as an expert, certain questions.

The complaint charges, in substance, that the defendant, Wight, was driving an electric automobile along one of the streets of Denver at a greater rate of speed than was reasonably safe, and that he so negligently operated the vehicle that he drove it suddenly and violently upon the sidewalk, and caused it to strike Samuel E. Bishop, who was walking thereon, and to inflict upon him injuries from which he afterwards died. The answer details the occurrences leading up to the striking of Bishop as follows:

"That in the forenoon of the 25th day of July, A. D. 1912, this defendant was lawfully riding in and operating an electric automobile, directing the same in a northwesterly direction upon and along that certain street or thoroughfare in the city and county of Denver, Colo., known as Fifteenth street; that this defendant was driving or directing said automobile on the right or proper side of said street, and that he was then and there exercising all due and reasonable care in the management, driving, operation, and control thereof, having regard to the location and safety of the public and the then condition of traffic, and further that he was then and there, and at all times in said complaint mentioned, in all matters, things, and respects observing and conforming to all rules, regulations, laws, and ordinances with respect to the operation, driving, and control of vehicles, and was exercising all due, reasonable, proper, or possible care in the premises, and while so engaged, and while driving said electric automobile down or in a northwesterly direction upon said Fifteenth street as aforesaid, at the time aforesaid, and when within about 75 feet below or northwest from the point or place where that certain street or thoroughfare in the city and county of Denver, Colo., known and designated as Glenarm street, intersects with said Fifteenth street, and while and when this defendant was so rightfully, properly, and lawfully thereon, and driving thereon as aforesaid, and while this defendant was so exercising and observing all due, proper, possible, or reasonable care and caution as aforesaid, and while he was operating and driving the aforesaid electric automobile at a rate of speed not to exceed from four to six miles per hour, the said automobile so driven by this defendant as aforesaid was struck with great force and violence by a certain very large and heavy vehicle, known and designated as an automobile touring car, the motive power whereof was an engine propelled by gasoline, and which said touring car was then and there occupied, driven, and under the care and management of one Lester G. Palmer, who then and there negligently, carelessly, and unskillfully, and without having due or any regard for the safety of the public or of this defendant, steered, drove, and directed the said touring car at a high and excessive rate of speed, and negligently and carelessly, and in an effort to pass the electric automobile so driven by this defendant as aforesaid, did so manage, handle, and direct said touring car or automobile that the rear right wheel thereof collided with and against the electric automobile so driven by this defendant as aforesaid, and especially did the said touring car, so negligently and carelessly driven

by the said Palmer as aforesaid, collide with great force and violence against the left front wheel of the electric automobile of this defendant. This defendant further avers and alleges that the steering or guiding mechanism or machinery of the electric automobile so driven by this defendant was then and there connected with and attached to and operated upon the front wheels thereof, and that when the said touring car, so driven and directed by the said Palmer as aforesaid, collided therewith, and with the left front wheel thereof. then and there the said steering mechanism, as well as the power control of said electric automobile, was violently displaced, dislocated, and disarranged, and being so displaced, dislocated, and disarranged was then and there temporarily rendered wholly beyond the power of this defendant or of any human agency to control; that so great and violent was the impact of the said touring car, so driven and directed by the said Palmer as aforesaid, that the electric automobile, so driven and occupied by this defendant as aforesaid, and notwithstanding the immediate, forcible, and continued application of the brakes thereto by this defendant, was suddenly and with great violence carried to and thrust upon the sidewalk upon the northeasterly side of said Fifteenth street, and that then and there, and wholly beyond the power of this defendant or any human agency to prevent, the said electric automobile, so driven by this defendant as aforesaid, was also carried to and thrust upon the person of said Samuel E. Bishop, who was then and there upon said sidewalk."

The testimony showed that the injury occurred substantially as stated in the portion of the answer above quoted.

[1] The questions put to Metz were intended to elicit statements to the effect that after the striking of the front wheel of the electric automobile by the hub of the wheel of the touring car, thereby causing the former to turn abruptly towards the sidewalk, it could have been stopped by Wight within such a distance as would have avoided the striking of Bishop. The questions were put in different forms. The following may be taken as a fair representative:

"Q. Suppose, Mr. Metz, that two cars are proceeding in a northerly direction down Fifteenth street, one an electric coupé and the other a five-passenger Cadillac touring car, and the left wheels of the electric coupé are approximately 6 to 16 inches from the right car track of the inbound track—right rail of the inbound track—and the automobile (gas car) is operating in the same direction, and while going past the electric coupé the rear hub of the right rear wheel thereof comes in contact with the rim of the left front wheel of the electric, causing the front wheels to turn at an angle so that, if the movement of the electric coupé were continued, it would strike the curb, apparently both front wheels at the same time; and suppose, further, that this Ohio electric is operated under the first or second speed, going ahead: State to the jury what in your judgment would be the distance that machine could be stopped in by an immediate application of the brakes immediately after the point of contact or impact and the shutting off of the power?"

The court sustained objections to these questions upon the ground that they were not matters for expert testimony. We think this ruling of the court was correct.

"The primary rule, concerning all evidence, is that personal knowledge of such facts as a court or jury may be called upon to consider should be required of all witnesses, where it is attainable. It is also an elementary rule that, where the court or jury can make their own deductions, they shall not be made by those testifying. In all cases, therefore, where it is possible to inform the jury fully enough to enable them to dispense with the opinions or deductions of witnesses from things noticed by themselves, or described by others, such opinions or deductions should not usually be received." Evans v. People, 12 Mich. 27; Missouri Pac. Ry. Co. v. Fox, 56 Neb. 746, 77 N. W. 130; Brinks Chicago Express Co. v. Kinnare, 168 Ill. 643, 48 N. E. 446.

The only aid an expert could have given would have been for him to have stated within what distance a vehicle of the type in question and run at the rate given could have been stopped. It was impossible for him to form any more accurate judgment of the effect of the impact of the touring car against the electric coupé than the jury could form for itself.

[2] There was no testimony tending to show negligence on the part of Wight. He had no control over the force which was the proximate cause of the injury. It was through no fault of his that the vehicle was turned towards, and driven upon, the sidewalk. The complaint tendered no issue on the question of due care on his part after his machine was struck. Even if it had, the undisputed testimony shows that he did all he could to stop it. It was therefore the duty of the trial court to direct the jury to return a verdict in his favor. Canadian Northern Ry. Co. v. Senske, 201 Fed. 637, 120 C. C. A. 65, and authorities there cited.

The judgment of the court below must be affirmed; and it is so ordered.

T. C. MUNGER, District Judge (dissenting). I am unable to agree with the statement in the foregoing opinion that the injury occurred substantially as described in the portion of the answer quoted. That narrative declares that the defendant's automobile was struck by Palmer's automobile as Palmer was driving around the defendant, thereby causing defendant's car to veer toward the sidewalk, and to get beyond his control. Palmer was a witness on the trial and testified as follows:

"Q. Mr. Palmer, I didn't gather altogether whether you meant to testify that this little knock that you heard came by reason of your car hitting Mr. Wight's car or not. You were about 2½ feet away when you first heard the knock. Now, what do you mean? A. I heard two things come together—an impact. Q. You mean, Mr. Palmer, your car hit his car? A. No, sir. Q. You mean that you did not hit his car? A. I did not. Q. Didn't you testify in the coroner's jury inquest? A. I did. Q. And didn't you state that you did hit the car on this day with your car? A. No, sir; I did not. * * * Q. At the coroner's inquest you are supposed to have testified as follows: 'I came down Fifteenth street that Thursday morning about quarter past 10 or half past. I followed Mr. Wight from the alley between Glenarm and Tremont and went to go round him. He was going very slowly, but wasn't watching. When he got to the other side of Glenarm, he slowed up and I started to go around. As I went around, I supposed he would be looking to see me. I went into my second speed. I was 10 or 12 feet behind him for half a block. I didn't know that my machine struck Wight's machine until I had gotten entirely past. There was a car coming up the street leaving Welton, and as I went to go around I turned my machine in. I supposed Mr. Wight had his machine in, and I didn't know I had struck him. I didn't know I had struck him.' Do you now say that you did not strike him? A. I did not strike Mr. Wight's machine. Q. Did you or not testify as I have read? A. Yes, sir; that is my testimony. Q. What made you say there that you did not know you had struck him until you got past? You found out, after you got past, you had struck him? A. I supposed, when his machine went off to the curb, something had happened. Q. But that was just a suspicion, was it? A. That was all. Q. When did you find out that you hadn't struck him at all? A. I didn't say I didn't strike him at all. My machine came in contact with Mr. Wight's machine. Q. I understood you to deny that fact? A. I didn't hit Mr. Wight's

machine, because I did not drive into it.  Q. Was there an impact between the two cars?  A. There must have been of some kind."

As the petition charged that the defendant negligently operated his car and negligently lost control thereof, this testimony of Palmer made an issue of fact for the jury, for, if Palmer's car did not strike the defendant's car, then the defendant must have turned his car to the left and struck Palmer's car, and may thereby have lost control of his car.

Neither can I agree with the statement that "the complaint tendered no issue on the question of due care on his [defendant's] part after the machine was struck."  All witnesses agree that the defendant's car turned toward the sidewalk after the two cars collided.  The petition alleges that the defendant negligently drove and directed said vehicle, or caused the same to be driven and directed, toward the sidewalk, and negligently, without applying the brake or shutting or reversing the power, drove and directed said vehicle upon and across said Fifteenth street toward the sidewalk, thence over said street and upon and over the curbing thereof and upon said sidewalk.  While this petition does not expressly state that this occurred after the cars collided, such an allegation was unnecessary, as it describes and characterizes the defendant's act after the cars met, and therefore does tender an issue on the exercise of due care by the defendant in the subsequent conduct of his car.

Nor can I agree with the statements that there was no testimony tending to show negligence on the part of the defendant, and that he did all he could to stop his car after the collision, and before he ran down the deceased.  If it be conceded that defendant's car was struck by Palmer's car, causing it to be deflected from its course down the street, yet the undisputed evidence is that defendant's car was turned and ran at almost a right angle across the street and over the curb and sidewalk to where the deceased was standing.  The forward impetus of Palmer's car could not impart much acceleration to defendant's car while it pursued this course.  I think the defendant's conduct in the control of his car after the collision was a question for the jury, because, by defendant's own testimony, while his car was traveling toward the curb (a distance estimated to be from 10 to 14 feet) defendant was sitting where he could control the car, was in full possession of his senses, decided what he should do, and pursuant to that decision he says he pushed with his feet upon the brakes, and with his left hand turned the disc that cuts off the power; but he admits that, although his right hand was upon the steering lever that controlled the direction in which the car traveled, he failed to use it.  No reason was given why he did not turn this lever, and there was nothing to prevent his pushing it forward and thereby changing the direction in which the car was going.  The steering machinery was in good condition, and he drove the car away soon after the accident.  Whether he used ordinary care in failing to use the steering lever was a question for the jury, for it cannot be said, as a matter of law, that every reasonable man would say that a driver who held the power disc in one hand and the steering lever in the other, while

his feet rested on the power brakes, would operate the brakes and disc, and would not operate the steering lever.

The following question was put to the witness Metz:

"Suppose, Mr. Metz, that Mr. Wight's machine was proceeding in a northerly direction, so that the left wheels were approximately 6 to 16 inches from the right-hand rail of the inbound track, and a gas car—five-passenger touring car—attempted to pass the coupé at the left, and ran at a speed not to exceed 6 or 8 miles an hour, and the hub of the rear right wheel of the gas car came in contact with the rim of the left front wheel of the coupé, causing the electric coupé—causing the front wheels of the electric coupé—to make a sudden turn to the right and start in the direction of the curb; and suppose, further, that the electric coupé was being operated at a speed of not to exceed 4 to 6 miles an hour, and immediately after the impact occurred the operator of the electric coupé shut off his power and applied both brakes as hard as he could: Would, in your judgment, the electric coupé go from its place near the right rail of the inbound track to the curb, up over the curb 6 inches in height, and across the sidewalk, before it could be stopped?"

He should have been allowed to answer it, because no proper objection was made. The defendant's attorney said, "I object," and the court sustained the objection, and the defendant's attorney then said, "I move to strike out the answer," and the court struck it out. As no ground of objection was stated, the situation falls within the observation of this court in M., K. & T. Ry. Co. v. Elliott, 102 Fed. 96–105, 42 C. C. A. 188, 198:

"It will be observed that no ground for the objection is stated. The defendant simply 'objected,' which, for any legal purpose, is exactly equivalent to silence." Katahdin Pulp & Paper Co. v. Peltomaa, 156 Fed. 342, 84 C. C. A. 238; Lake Shore & M. S. Ry. Co. v. Eder, 174 Fed. 944, 98 C. C. A. 556; Hollweg v. Schaefer Brokerage Co., 197 Fed. 689, 117 C. C. A. 83; Ogden City v. Weaver, 108 Fed. 564, 47 C. C. A. 485; Shandrew v. Chicago, St. P., M. & O. Ry. Co., 142 Fed. 320, 73 C. C. A. 430.

The witness should have been allowed to answer this and similar questions put to him, because the witness was qualified, as he had been an operator for six years in a garage where the same kind of cars were sold, he had run them every day, he knew the defendant's car, which was sold at his garage, and was familar with conditions at the scene of the accident. Jurors cannot know, as well as such a mechanician, the distance in which a known car could be stopped under the circumstances stated, and for that reason expert testimony is admissible as an aid to the jury in determining whether due care was used in bringing the car to a stop. Chamberlayne on Evidence, §§ 2447–2450; Jones on Evidence (2d Ed.) § 381; Mahoning Ore & Steel Co. v. Blomfelt, 163 Fed. 827, 91 C. C. A. 390.

For these reasons, I think the judgment should be reversed, and a new trial ordered.